## Case No. 280.

### The AMERICA.

[2 Ben. 475.][1]

District Court, S. D. New York. June, 1868.

COLLISION IN HUDSON RIVER—TOWBOAT—KEEPING TO THE RIGHT.

1. Where a steamboat was coming down the Hudson river, having boats in tow on each side, and having lights properly set, and kept close to the west bank of the channel, and, seeing the lights of an approaching tow, slowed and stopped, and the tug-boat coming up was also on the west side of the channel, and, seeing the other's lights, hauled out to the eastward, and then straightened up the river, and a collision occurred between one of the boats which she was towing astern, and the boat on the port side of the steamboat coming down: *Held*, That there was no fault on the part of the boat that was injured.

[Cited in McCoy v. The Carrituck, Case No. 8,730.]

2. That the steamboat going up was in default in not keeping to the east side of the channel, and that she either did not sheer far enough to the eastward, or straightened up the river too soon.

[Cited in McCoy v. The Currituck, Case No. 8,730.]

[See Waring v. Clarke, 5 How. (46 U. S.) 441.]

3. That the steamboat coming down was not shown to be in fault.

In admiralty. This was a libel for a collision which occurred about 6 o'clock P. M., on the 25th of October, 1865, after dark, on the Hudson river, about seven miles below Albany, between the lake boat or barge Contest and a boat in tow of the steamboat America, whereby the Contest was badly damaged. The amount of damages claimed was $10,000. The Contest was one of seventeen boats, all of which were in tow astern of the steamboat New Haven, fastened in tiers by hawsers, there being five tiers, the boats in each tier being abreast of each other, and the Contest being the extreme port boat in the third or the fourth tier of boats, there being four boats in that tier. The New Haven was bound, with her tows, From New York to West Troy. The America was on her way down the river from Albany, with two boats lashed side by side to her starboard side, and two to her port side, and some others astern, all in tow. The port bow of the extreme port boat, on the port side of the America, struck the port side of the Contest about amidships, tearing off her chime plank, and cutting through her timbers, and causing her to leak badly, and injuring her cargo. The libel charged negligence on the part of both the America and the New Haven.

The answer of the America set up, that when the lights of the New Haven were seen from the America, at the distance of from a mile to a mile and a half, the America, with her tows, hauled close in to the westward, and near to a stone dike which forms the western bank of the river for a considerable distance; that the New Haven, still coming on pretty well in to the westward, the America was slowed; that the New Haven then sheered out to the eastward, far enough to herself clear the most easterly boat on the port side of the America, and in so doing, disclosed to the view of the America the boats towed astern of the New Haven; that the engine of the America was then stopped, and was shortly after backed, as soon as there appeared to be danger of a collision, and was backing, when a boat or boats astern of the New Haven, on the port side, were dragged across the bow of the extreme boat on the port side of the America, by the New Haven, which, after sheering out to the eastward, straightened up the river so close to the extreme boat on the port side of the America, as herself to pass within ten or fifteen feet, or nearer, off the port side of said boat; that, at the time of the collision, the extreme boat on the starboard side of the America was within about twenty feet of the dike on the west side of the river, and as far to the westward as it was safe for her to be, and the America had backed so that the boats towed astern of her were close upon her; that there was abundant time and room for the New Haven, with her tow, to have passed to the eastward of the America and her tow, and she ought to have passed so far to the eastward with her tow as to avoid all danger of a collision; that she did not do this, nor did she slow or stop before the collision; that the tide was flood, but not running strong; and that the collision was not the fault of the America.

The answer of the New Haven contained no statement of the particulars of the collision, or of the grounds assumed by the New Haven in defence. It consisted of a denial of all the material allegations of the libel, and of an averment that the New Haven was carefully navigated, and that the collision took place in consequence of the individual fault, or combined fault, of the Contest and the America, and was the fault of the agents and servants of the libellants, and not of the claimant.

Spencer, Hoes & Metcalf, for libelants.

C. Van Santvoord, for The America.

Beebe, Dean & Donohue, for The New Haven.

BLATCHFORD, District Judge. There is no evidence showing any fault on the part of the Contest. The testimony is, however, satisfactory to show that the New Haven was in fault. She was violating the statute law of New York (1 Rev. St. pt. 1, c. 20, tit. 10, § 1) which required her to keep to the right or easterly side of the channel. Her pilot, Kane, who was at the wheel at the time of the collision, states that he was going along the dike till he got above the dam,

[1][Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

and that he then sheered to the eastward, on seeing the America approach, till he got clear of the America's tow, and then straightened up the river. But either he did not soon enough sheer to the eastward, or else he straightened up too soon, after sheering. That the New Haven dragged the Contest into contact with, and across the bow of the boat lashed to the America, is shown by the fact, that the boats in front of the Contest, as well as she herself, and the boat behind her, struck against the boat lashed to the America, although none of them were injured to the extent that the Contest was. The theory on the part of the New Haven, that the America took a sheer to the eastward when the two steamboats were abreast of each other, is not supported by the evidence. The America came down as near to the dike as it was safe for her to go, and, if any thing, she sheered to the westward rather than the eastward, when she saw the near approach of the New Haven. She had a right to suppose that the New Haven would keep to the right of the channel, and would sheer out to the eastward in season, the lights of the America being plainly visible. Her speed was moderate, and she was slowed and stopped and backed promptly, and her forward motion was stopped at the time of the collision, whereas the New Haven and her tows were under headway at that time. No fault is shown on the part of the America.

The libel must be dismissed as to the America, with costs, and the New Haven must be condemned in damages and costs, with a reference to a commissioner, to ascertain the damages caused to the libellants by the collision.